UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

REYNARD MOSLEY,

      Petitioner,

v.                                      Case No. 1:15cv31/WS/CJK

JULIE JONES,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

      Before the court is an amended petition for writ of habeas corpus filed under 28 U.S.C. § 2254. (Doc. 9). Respondent filed an answer, submitting relevant portions of the state court record. (Doc. 26). Petitioner replied. (Doc. 28). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter. Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts. The undersigned further concludes that the pleadings and attachments before the court

show that petitioner is not entitled to habeas relief, and that the amended petition should be denied.

## BACKGROUND AND PROCEDURAL HISTORY

Petitioner was charged by information filed in Alachua County Circuit Court Case No. 09-CF-4735, with four counts of robbery with a firearm (Count I-IV) and four counts of kidnapping (Counts V-VIII). (Doc. 26, Ex. A).[1] The charges involved four victims: Stephen Wyatt, Jeremy Fisher, Kenneth Wyatt and Dayna Nichols. Petitioner went to trial and was found guilty of all counts as charged. (Ex. C (jury verdict); Ex. F (trial transcript)). Petitioner was adjudicated guilty and sentenced to concurrent terms of 40 years in prison followed by 10 years on probation for each count. (Ex. D). The Florida First District Court of Appeal (First DCA) affirmed the judgment on October 10, 2011, per curiam and without a written opinion. *Mosley v. State*, 71 So. 3d 120 (Fla. 1st DCA 2011) (Table) (copy at Ex. J).

On December 3, 2012, petitioner filed a counseled motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Ex. L, pp. 1-28). The state circuit court summarily denied the motion without an evidentiary hearing. (Ex. L,

---

[1]Citations to exhibits are to those provided at Doc. 26. If a page of an exhibit has more than one page number, the court's citation refers to the number appearing at the bottom center of the page.

pp. 31-316). The First DCA affirmed, per curiam and without a written opinion. *Mosley v. State*, 156 So. 3d 1081 (Fla. 1st DCA 2015) (Table) (copy at Ex. N). The mandate issued February 18, 2015. (Ex. O).

Petitioner filed his original federal habeas petition on February 19, 2015, (doc. 1, p. 1), which he later amended (doc. 9). The amended petition raises two grounds for relief: a double jeopardy claim and an ineffective assistance of trial counsel claim. Respondent asserts that petitioner's claims fail for one or more of the following reasons: (1) the claim is not cognizable on federal habeas review, (2) the claim is procedurally defaulted, (3) the claim is without merit. (Doc. 26).

## RELEVANT LEGAL PRINCIPLES

### Claims Cognizable on Federal Habeas Review

Federal habeas relief is available to correct only federal constitutional injury. 28 U.S.C. § 2254(a); *Swarthout v. Cooke*, 562 U.S. 216, 219, 131 S. Ct. 859, 178 L. Ed. 2d 732 (2011) ("The habeas statute unambiguously provides that a federal court may issue a writ of habeas corpus to a state prisoner only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." (internal quotations and citations omitted)); *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991) (holding that errors that do not infringe

upon a defendant's federal constitutional rights provide no basis for federal habeas corpus relief; stating, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

Exhaustion and Procedural Default

Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all available state court remedies for challenging his conviction, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (*quoting Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). The petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); *Picard*, 404 U.S. at 277-78. A claim that was not presented to the state court and can no longer be litigated under state procedural rules is considered procedurally defaulted, *i.e.,* procedurally barred from federal review. *O'Sullivan*, 526 U.S. at 839-40, 848; *Hittson v. GDCP Warden*, 759 F.3d 1210, 1260 n.56 (11th Cir. 2014) ("Where a return to state court would be futile – because the petitioner's claims

would clearly be barred by state procedural rules – a federal court can 'forego the needless judicial ping-pong' and treat unexhausted claims as procedurally defaulted." (*quoting Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998))); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (holding that federal habeas courts should enforce applicable state procedural bars even as to claims that were never presented to the state courts).

A petitioner seeking to overcome a procedural default must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L.Ed.2d 640 (1991); *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993). "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (*citing Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)). The miscarriage of justice exception requires the petitioner to show that "a constitutional violation has probably resulted in the

conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). This standard is very difficult to meet:

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.

513 U.S. at 327. "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Id.*

Section 2254 Standard of Review

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19. Section 2254(d) provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2] The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal

---

[2]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *Thaler v. Haynes*, 559 U.S. 43, 47, 130 S. Ct. 1171, 175 L. Ed. 2d 1003 (2010); *Woods v. Donald*, — U.S. —, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015) ("We have explained that clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." (internal quotation marks and citation omitted)).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the

result of the state-court decision contradicts them.").  Where there is no Supreme

Court precedent on point, the state court's conclusion cannot be contrary to clearly

established federal law.  *See Woods*, 135 S. Ct. at 1377 (holding, as to claim that

counsel was *per se* ineffective in being absent from the courtroom for ten minutes

during testimony concerning other defendants:  "Because none of our cases confront

the specific question presented by this case, the state court's decision could not be

contrary to any holding from this Court." (internal quotation marks and citation

omitted)).  If the state court decision is contrary to clearly established federal law,

the federal habeas court must independently consider the merits of the petitioner's

claim.  *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed.

2d 662 (2007).

If the "contrary to" clause is not satisfied, the federal habeas court next

determines whether the state court "unreasonably applied" the governing legal

principles set forth in the Supreme Court's cases.  The federal court defers to the

state court's reasoning unless the state court's application of the legal principle(s)

was "objectively unreasonable" in light of the record before the state court.

*Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct.

2736, 159 L. Ed. 2d 683 (2004) (per curiam).  In applying this standard, the Supreme

Court has emphasized:

> When reviewing state criminal convictions on collateral review, federal
> judges are required to afford state courts due respect by overturning
> their decisions only when there could be no reasonable dispute that they
> were wrong.  Federal habeas review thus exists as "a guard against
> extreme malfunctions in the state criminal justice systems, not a
> substitute for ordinary error correction through appeal."  *Harrington,
> supra,* at 102-03, 131 S. Ct. 770 (internal quotation marks omitted).

*Woods*, 135 S. Ct. at 1376 (*quoting Harrington v. Richter*, 562 U.S. 86, 131 S. Ct.

770, 178 L. Ed. 2d 624 (2011)).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on

the merits in state court where that adjudication "resulted in a decision that was based

on an unreasonable determination of the facts in light of the evidence presented in

the State court proceeding."  28 U.S.C. § 2254(d)(2).  The "unreasonable

determination of the facts" standard is implicated only to the extent the validity of

the state court's ultimate conclusion is premised on unreasonable fact finding.  *See

Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011).  As with the "unreasonable

application" clause, the federal court applies an objective test.  *Miller-El v. Cockrell*,

537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state

court decision based on a factual determination "will not be overturned on factual

grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.").  Federal courts "may not characterize . . . state-court factual determinations as unreasonable merely because we would have reached a different conclusion in the first instance." *Brumfield v. Cain*, — U.S. —, 135 S. Ct. 2269, 2277, 192 L. Ed. 2d 356 (2015) (quotation marks omitted).

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct.  28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").  Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and § 2254(e)(1) interact in the context of fact-based challenges to state court adjudications.  *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d 739 (11th Cir. 2011).  However, the Eleventh Circuit declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner

failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision." *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. at 954. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102.

## DISCUSSION

Ground One    "Trial court erred when petitioner was improperly convicted of four counts of robbery where each of the counts was identical but for the named victim, to wit: each count alleged the commission of a robbery in which the same property, to include an unspecified amount of U.S. currency, was allegedly taken from one of four individuals during a single incident, in violation of the double jeopardy clauses of the Florida and United States Constitutions." (Doc. 9, p. 4).

Petitioner challenges his robbery convictions on the grounds that he was improperly convicted and sentenced four times for a single criminal act, in violation of the double jeopardy clauses of the Florida and United States Constitutions.

Respondent argues, correctly, that petitioner's challenge on state-law grounds (violation of the Florida Constitution) is not cognizable on federal habeas review. *See* 28 U.S.C. § 2254(a). Respondent asserts that petitioner's federal-law challenge based on the United States Constitution fails, because although petitioner presented a double jeopardy claim in his direct appeal, he did not present it as a federal issue. (Doc. 26, pp. 7-12). Respondent argues that even if petitioner satisfied the exhaustion requirement, his claim fails because the state court's rejection of the claim was consistent with clearly established federal law. (Doc. 26, pp. 12-15).

The undersigned has thoroughly reviewed the parties' direct appeal briefs (Exs. G-I), and finds that petitioner's federal double jeopardy claim was fairly presented to the First DCA. Petitioner labeled his claim as involving the Florida and United States Constitutions, and his argument contained an extensive quotation discussing both state and federal law. (Ex. G, pp. 19-20). The State's answer brief applied the federal standard to petitioner's claim. (*See* Ex. H, p. 12). A reasonable reader would understand that petitioner was raising both a state and federal double jeopardy challenge. *See Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d 1317, 1344-45 (11th Cir. 2004) (holding that federal courts require a petitioner to present his claims to the state court "such that a reasonable reader would understand each claim's

particular legal basis and specific factual foundation.").  Petitioner's claim is not procedurally defaulted.

The First DCA affirmed petitioner's convictions and sentences without explanation.  (Ex. J).  The First DCA's decision is considered an "adjudicat[ion] on the merits" under § 2254(d), so as to warrant deference.  *Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

    A.    Clearly Established Federal Law

"The Double Jeopardy Clause of the Fifth Amendment provides that no person shall 'be subject for the same offence to be twice put in jeopardy of life or limb.'" *Justices of Boston Mun. Court v. Lydon*, 466 U.S. 294, 306, 104 S. Ct. 1805, 80 L. Ed. 2d 311 (1984) (*quoting* U.S. Const., amend. V).  This guarantee is applicable to the states through the Fourteenth Amendment.  *See Benton v. Maryland*, 395 U.S. 784, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969).  The Double Jeopardy Clause embodies three separate guarantees:  "It protects against a second prosecution for the same offense after acquittal, against a second prosecution for the

same offense after conviction, and against multiple punishments for the same offense." *Justices*, 466 U.S. at 307-08 (citation and footnote omitted). "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S. Ct. 673, 74 L. Ed. 2d 535 (1983); *Whalen v. United States*, 445 U.S. 684, 689, 100 S. Ct. 1432, 63 L. Ed. 2d 715 (1980) ("The Double Jeopardy Clause at the very least precludes . . . courts from imposing consecutive sentences unless authorized by [the legislature] to do so."); *Albernaz v. United States*, 450 U.S. 333, 344, 101 S. Ct. 1137, 67 L. Ed. 2d 275 (1980) ("[T]he question of what punishments are constitutionally permissible is not different from the question of what punishment the Legislative Branch intended to be imposed. Where [the legislature] intended . . . to impose multiple punishments, imposition of such sentence does not violate the Constitution.").

The court "must examine the various offenses for which a person is being punished to determine whether, as defined by the legislature, any two or more of them are the same offense." *United States v. Dixon*, 509 U.S. 688, 745, 113 S. Ct. 2849, 125 L.Ed.2d 556 (1993). The relevant question is whether the offenses are "sufficiently distinguishable to permit the imposition of cumulative punishment."

*Id*. at 745 (internal quotation marks omitted).  Where no clear legislative intent has been expressed, courts apply the "same-elements test" of *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932), which provides that two statutes are not the "same offense" for purposes of double jeopardy if "each provision requires proof of a fact which the other does not."  *Blockburger*, 284 U.S. at 304.  Although the court will decide under federal law whether a double jeopardy violation has occurred, it must accept the Florida courts' interpretation of the State's own statutes.  *Hunter*, 459 U.S. at 368.

      B.     Federal Review of State Court Decision

      Florida's robbery statute does not contain a clear statement of legislative intent.  Fla. Stat. § 812.13.  The Florida Legislature, however, has instructed generally that its intent "is to convict and sentence for each criminal offense committed in the course of one criminal episode or transaction and not to allow the principle of lenity . . . to determine legislative intent."  Fla. Stat. § 775.021(4)(b); *see* Fla. Stat. § 775.021(4)(a) ("Whoever, in the course of one criminal transaction or episode, commits an act or acts which constitute one or more separate criminal offenses, upon conviction and adjudication of guilt, shall be sentenced separately for each criminal offense....").  Exceptions to this rule are, among other things,

"[o]ffenses which require identical elements of proof." *Id*. § 775.021(4)(b)(1).

Thus, if Counts I-IV were based on a single criminal act, petitioner's convictions on

these counts would appear to violate the "same-elements test" of *Blockburger* and

Florida law, because the offenses required proof of the same elements. *See* Fla. Stat.

§ 775.021(4)(b)(1); *Blockburger*, 284 U.S. at 304. Florida law, however, provides

that a defendant may be punished multiple times under the same statute so long as

the offenses are each based on "distinct" criminal acts. *See, e.g., State v. Drawdy*,

136 So. 3d 1209, 1213 (Fla. 2014); *Hayes v. State*, 803 So.2d 695, 700 (Fla. 2001)

("[T]he prohibition against double jeopardy does not prohibit multiple convictions

and punishments where a defendant commits two or more distinct criminal acts.").

This court must determine whether the First DCA reasonably could have

concluded that petitioner's robbery convictions were each based on "distinct"

criminal acts. "To determine whether similar criminal acts are 'distinct' under

Florida law for double-jeopardy purposes, courts look to spatial and temporal aspects

of the criminal conduct." *Stoddard v. Sec'y, Dep't of Corr.*, 600 F. App'x 696, 704

(11th Cir.), *cert. denied*, — U.S. —, 136 S. Ct. 114, 193 L. Ed. 2d 91 (2015) (*citing

State v. Paul*, 934 So. 2d 1167, 1172-73 (Fla. 2006), *abrogated in part on other

grounds by Valdes v. State*, 3 So. 3d 1067, 1075-77 (Fla. 2009); *R.J.R. v. State*, 88

So. 3d 264, 267-68 (Fla. 1st DCA 2012)). "[C]ourts look to whether there are multiple victims, whether the offenses occurred in multiple locations, and whether there has been a 'temporal break' between offenses." *Paul*, 934 So.2d at 1173 (quotation marks omitted). This court is bound to accept the Florida court's construction of that State's statutes. *Hunter*, 459 U.S. at 368.

By affirming petitioner's convictions and sentences, the First DCA implicitly determined that the evidence presented at trial was sufficient to permit the jury to conclude that four distinct robberies occurred during the series of events at Kenneth Wyatt and Dayna Nichols' apartment on the night in question. Petitioner has not met his burden of showing that this determination was contrary to, or involved an unreasonable application of, clearly established federal law.

The trial transcript reflects that all of the victims were robbed inside Kenneth Wyatt and Dayna Nichols' apartment, while Kenneth's brother, Stephen Wyatt, was moving himself and his girlfriend into the apartment. (Ex. F, p. 78). The robbers (petitioner and his three co-defendants) forced Stephen Wyatt into the kitchen of the apartment and, at gunpoint, took Stephen's cell phone, debit card, cigarettes, and money by removing them from his pants pockets. (Ex. F, pp. 53-57). The robbers also took Stephen Wyatt's PlayStation 3 from the apartment. (Ex. F, pp. 57-58, 83-

86). The robbers stopped Jeremy Fisher just inside the door to the apartment and, with a gun to Mr. Fisher's head, demanded money. Fisher took $285 from his pants pocket and gave it to the robbers. (Ex. F, pp. 69-72). After petitioner demanded money from Kenneth Wyatt at gunpoint, Kenneth led petitioner into his bedroom, retrieved $250-$320 from a drawer, and gave the money to petitioner. (Ex. F, pp. 81-84). Petitioner found Dayna Nichols in the living room and, while pointing his gun at her, took her cell phone. (Ex. F, pp. 112-122).

The victims' testimony provides more than a reasonable basis to conclude that petitioner and his co-defendants took, at gunpoint, different cash and property from different victims, separately, and in different areas of the apartment. It would not, therefore, have been unreasonable for the First DCA to conclude that petitioner committed four distinct criminal acts of robbery under Florida law. Given that the double jeopardy guarantee "does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended", *Hunter* 459 U.S. at 366, the state court's rejection of petitioner's claim was not contrary to and did not involve an unreasonable application of federal law. Petitioner is not entitled to federal habeas relief on Ground One.

Ground Two          "Petitioner was deprived of his right to the effective assistance
                    of counsel when his trial counsel failed to file a motion to
                    suppress his confessions."  (Doc. 9, p. 6).

During petitioner's trial, the State called a number of law enforcement officers
who each testified about his or her particular role in investigating the robberies on
November 12, 2009, and about evidence that was collected in reference to this case.
(Ex. F, pp. 152-69, 180-207, 208-24, 234-47, 248-64, 265-80, 281-85, 287-89, 290-
93).  The crime scene investigator testified that while the suspects were running
away, one of them hit a railroad tie and fell, possibly injuring his left leg.  (Ex. F, p.
191).  After this was confirmed by a detective at the scene, an alert was issued to
local hospitals for a person with leg injuries, and law enforcement learned that
petitioner had been dropped off in front of the emergency room at one of the
hospitals and was being treated there.  (Ex. F, pp. 210-211).  According to the
testimony of the four detectives (detectives Acevedo, Dale, Schentrup and Smith)
who interviewed petitioner at North Florida Regional Medical Center and Shands
Hospital the night of, and day following, the robberies, petitioner made detailed
statements to them in which he incriminated himself, Erneil Davis, Antoine Watson,
and Larry Calhoun in the robberies, but downplayed his own role as an unarmed
lookout.  (Ex. F, pp. 215-18, 255-59, 271-74, 284-85).  A roll of duct tape (each

robbery victim was duct-taped after he or she was robbed) was found in the trunk of a car described by petitioner as being involved in the robbery, after the car was located at the residence of Erneil Davis. (Ex. F, pp. 287-288). It is petitioner's statements to Detective Acevedo, and additional evidence obtained from those statements, that are the subject of his present claim. Petitioner claims his confessions "were induced by Detective Acevedo's false promise to him that in exchange for his confession, he would not face criminal charges. In making said false promises, Petitioner submits that that [sic] Detective Acevedo acted coercively, and in doing so overcame Petitioner[']s free will and intention to remain silent in the face of the Detectives' accusations." (Doc. 9, p. 6). Petitioner asserts that had his trial counsel moved to suppress his statements, the motion would have been granted. Petitioner argues that without his confessions, there is a reasonable probability the outcome of his trial would have been different, "as the only evidence left against Petitioner would have been the incredible testimony of two witnesses who claimed to be able to indentify [sic] Petitioner by his forehead and eyes." (Doc. 9, p. 6). Respondent asserts that the state court's rejection of petitioner's claim was not contrary to, or an unreasonable application of, clearly established federal law. (Doc. 26, pp. 15-24).

A.     Clearly Established Federal Law

In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set out a two-part inquiry for ineffective assistance of counsel claims.  The petitioner must show that (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him.  466 U.S. at 687.  "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness.  Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  *Darden v. Wainwright*, 477 U.S. 168, 184, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986) (*quoting Strickland*, 466 U.S. at 694).

Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.  The burden to overcome that presumption and to show that counsel's performance was deficient "rests squarely on the defendant." *Burt v.*

*Titlow*, 571 U.S. —, 134 S. Ct. 10, 17, 187 L. Ed. 2d 348 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 189, 131 S. Ct. 1388, 179 L. Ed. 2d 557 (2011) ("To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances." (quotation marks and alterations omitted)). "[T]he absence of evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Titlow*, 134 S. Ct. at 17 (quotation marks and alterations omitted).

With regard to prejudice, the *Strickland* court emphasized that a defendant must show a "reasonable probability" of a different result. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *Strickland*, 466 U.S. at 698; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999). "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d

284 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105. As the Court in *Richter* explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

B.     Federal Review of State Court Decision

Petitioner raised this claim as the sole ground for relief in his Rule 3.850 motion. (Ex. L, pp. 1-27). The state circuit court identified the governing legal standard as the *Strickland* standard (Ex. L, pp. 31-32), and denied relief as follows:

> 5.     Here, the record reflects that prior to the sentencing hearing, defendant **consistently denied** committing the charged offenses and confessing to the detectives. In a letter to the court on January 4, 2010, Defendant stated the following:
>
> > I end up going to go play a couple of games of basketball with my cousin at Westside Park! just for like an hour in a half. that's all your honor. but then while going up for a dunk inside the hoop, while coming down, I had a terrible fall! that left me on the ground in pain with a

broken hip and a fractured pelvis!  I know I can't get into any details about my charges or about the case.  but **what I can say is that am "innocent"! and I would never put any ones child or parent in a situation like these robbers did.**

*See* Letter to Judge (emphasis added).

During a pretrial conference hearing, defense counsel told the court:  "[Defendant] was under the influence of Morphine and what have you, which is totally inconsistent with him coming up with this confession to this police officer, the detective."  *See* Pretrial Conference Hearing Transcript at 5 (lines 8-11).  He further stated:  "[I]t could all be developed though [sic] valid testimony, sir, as well as the hospital records that [Defendant] was incoherent and he was half semi-unconscious, semi-conscious."  *Id*. at 11 (lines 16-18).

At trial, Defendant testified that he was actually innocent of the charged offenses; and, that he did not confess to the detectives.  *See* Trial Transcript at 404 (lines 17-25) – 458 (lines 1-5).  He specifically denied telling the detectives that he was a look-out.  *Id*. at 437 (lines 23-25).  He specifically denied speaking with Detectives Smith, Dale, and Schentrup about the robbery.  *Id*. at 450 (lines 2-25) – 451 (lines 1-20), 453 (lines 21-25) – 454 (lines 1-5).  He specifically alleged at trial that these detectives lied under oath when they said that he confessed to them.  *Id*. at 455 (lines 15-25) – 456 (lines 1-8).  And, his entire defense at trial was based on the claim that he did not confess to the detectives.  *Id*. at 341 (lines 7-8) ("**[T]his confession that these policemen all talk about is nonexistent**"); 479 (lines 23-25) ("**So if they're going to lie about this false confession,** they're going to lie about something else, such as like where they got that duct tape"); 482 (lines 17-19) ("**You have to [ask] yourself:  Is this a valid confession here?  Did he confess?  What did he say?  You heard [Defendant] testify.  'I didn't tell them anything.'**"); 485 (lines 24-25) – 486 (line 1) ("**I'm telling you right now this was a set-up by the police department.  I mean, if they're going to lie about one thing, they're**

**going to lie about something else.**"); 486 (lines 3-4) ("**Then ask yourself this: Did they lie about the confession?**"); 486 (line 21) ("**Would [Detective Acededo] lie about, the first thing? The confession.**"). In support of the claim that he was unconscious, and thereby unable to confess, he called his family members, who stated that he was unconscious when they saw him at the hospital. *Id*. at 345 (lines 6-22), 346 (lines 8-16), 357 (lines 3-25) – 358 (lines 1-5), 361 (lines 2-6), 364 (lines 4-10), 369 (lines 22-25) – 370 (lines 1-9), 375 (lines 14-25) – 377 (lines 1-9).

During the presentence investigation, Defendant told the interviewing officer that he "denie[d] any part of the robbery." *See* Presentence Investigation Report at 3. He further stated that "he was not there [he was] convicted . . . on false accusations." *Id*.

During sentencing, Defendant admitted that he lied on the stand at trial; and, to the officer conducting the presentence investigation. *See* Sentencing Transcript at 28 (lines 17-25) – 29 (lines 1-19). However, he was adamant in the fact that he did not confess to Detectives Dale, Smith and Schentrup. *Id*. at 37 (lines 15-16) ("I did not talk to Mr. Schentrup and Bennie Smith, **I did not confess to them.**") (emphasis added).

6.    This Court notes that at no point in his motion does Defendant allege that he told his trial counsel that he confessed to law enforcement. In fact, the record reflects the contrary, which is that Defendant did not admit to confessing until after his trial. If Defendant told trial counsel that the detectives were lying about the confession, as reflected in the record, then counsel did not err by failing to move to suppress it based on it being the result of *quid pro quo* promises.

7.    This Court further notes that at both trial and sentencing Defendant indicated that he spoke with Detective Acevedo in order to cooperate, not based on any promises. *See* Trial Transcript at 416 (lines 19-25) – 438 (lines 1-22), 441 (lines 3-25) – 446 (line 1), 448 (lines 23-

25) – 456 (lines 1-8); Sentencing Transcript at 29 (lines 17-25) – 30 (lines 1-10), 37 (lines 1-25) – 38 (lines 1-23).

      8.    Based on Defendant's denial of the confession until to sentencing, this Court finds that counsel did not err by failing to move to suppress the confession prior to trial. In addition, Defendant fails to show any prejudice because even if his counsel had filed a motion to suppress, the motion would have been denied because there is no credible evidence supporting Defendant's claim of a *quid pro quo* promise. As his perjured testimony at trial reflects, Defendant is not a credible witness. Accordingly, the claim raised is without merit.

(Ex. L, pp. 33-35). The First DCA summarily affirmed. (Ex. N).

"Information supplied by a petitioner is extremely important in determining whether a lawyer's performance is constitutionally adequate." *Van Poyck v. Fla. Dep't of Corr.*, 290 F.3d 1318, 1325 (11th Cir. 2002). As the Supreme Court explained in *Strickland*: "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or action. Counsel's actions are usually based . . . on information supplied by the defendant." 466 U.S. at 691; *see also Chandler v. United States*, 218 F.3d 1305, 1324 (11th Cir. 2000) ("The reasonableness of a trial counsel's acts, including lack of investigation . . ., depends critically upon what information the client communicated to counsel." (internal quotation marks omitted)).

The First DCA reasonably could have determined that petitioner failed to establish he told trial counsel, prior to trial, the factual basis for his now proposed motion to suppress – that he was coerced into confessing by Acevedo's promise he would not be prosecuted. Not only was petitioner's Rule 3.850 motion devoid of any such allegation (that he told counsel of his incriminating statements and Acevedo's alleged coercion, *see* Ex. L, pp. 14-91, 23-24), petitioner's sworn trial testimony and that of his defense witnesses related a diametrically opposed version of petitioner's interactions with the detectives. At trial, petitioner testified that he did not make (and could not have made) any incriminating statements to the detectives because he had no involvement in or knowledge of the robberies, and that the detectives fabricated his incriminating statements in retaliation for his recent exposure of law enforcement corruption to the media. Petitioner's defense witnesses testified that petitioner was heavily sedated in the hospital and did not talk to law enforcement.

Petitioner's failure to establish that he communicated to counsel his present story of a coerced confession provides a reasonable basis for the First DCA to reject his ineffective assistance claim for failure to satisfy *Strickland*'s performance prong. Petitioner is not entitled to federal habeas relief on Ground Two.

CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (*quoting* 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. —, 137 S. Ct. 759, 774, — L. Ed. 2d — (Feb. 22, 2017) (*quoting Miller-El*, 537 U.S. at 327). The petitioner here cannot make that showing. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1. That the amended petition for writ of habeas corpus (doc. 9), challenging the judgment of conviction and sentences in *State of Florida v. Reynard Mosley*, Alachua County Circuit Court Case No. 09-CF-4735, be DENIED.

2. That the clerk be directed to close the file.

3. That a certificate of appealability be DENIED.

At Pensacola, Florida this 2nd day of May, 2017.

/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.